## ASSESSMENTS—CONTRACTS.

[Hamilton (1st) Circuit Court, December 1, 1902.]

FRIDMAN ET AL v. NORWOOD (VIL.).

1. ASSESSMENT RULE OF REAL FRONT APPLIED TO REAR OF LOT.

The rule, in assessing the cost of street improvements on abutting property by the front foot, that regard must be had as to what is the real front of the property so that the assessment made upon the lot will be for the number of feet on the improvement equal to its real feet frontage applies when the assessment is for an improvement upon which the rear of the lot abuts, as well as when it is for an improvement upon which the side of a lot abuts, and when the sides of a lot are not at right angles with the road the real front of the lot is always to be determined by ascertaining the number of front feet actually abutting upon the road.

2. MONEY RETAINED FOR STREET REPAIRS CANNOT BE INCLUDED IN ASSESSMENT.

If, in a contract for a street improvement, a provision that fifteen per cent. of the contract price is to be retained by the city for a period of five years is a guaranty on the part of the contractor as to the quality of the work it is properly a part of the original contract, and the amount thus retained is not deductible from the assessment, but if the per cent. retained is for maintenance and repairs it cannot be assessed against the abutting property. Hence, in such a contract, when it appears to have been the intention to divide the amount retained between the two, a court of equity will apportion it according to the general custom in such cases, including in the assessment the proportion retained as a guaranty and excluding the proportion retained for repairs and maintenance.

3. DAMAGES PAID FOR APPROPRIATING PROPERTY CANNOT BE ASSESSED BACK.

Damages paid to abutting property owners for the appropriation of property, property rights and the change of grade, cannot be assessed back upon the abutting property.

A. L. Herrlinger, Wm. E. Bundy, L. C. Black, W. M. Fridman and W. W. Symmes, for plaintiffs in error.

Wm. R. Collins, for defendant in error:

Until the decision of Norwood v. Baker, 12 O. F. D. 228 [172 U. S. 269; 19 Sup. Ct. Rep. 187], front foot assessments in Ohio were uniformly held to be constitutional. The Supreme Court of Ohio did not feel justified in reversing its former decisions, even after Norwood v. Baker became for a time the established law of the land.

We, of course bow cheerfully to the judgment of the Supreme Court

Fridman v. Norwood (Vil.).

of the United States, in all cases coming within its cognizance, but, at the same time feel that it is our duty to follow the decisions of this court, except where they have been distinctly overruled by that court or are clearly inconsistent with its holdings. A public duty will be performed by the submission of the issues of this case to that tribunal for its judgment thereon. Schroder v. Overman, 61 Ohio St. 1 [55 N. E. Rep. 158; 47 L. R. A. 156].

This question was again presented to the Supreme Court of the United States, and that court, in French v. Paving Co. 181 U. S. 324 [21 Sup. Ct. Rep. 625], and nine other cases, upheld front foot assessments for surface improvements and practically overruled Norwood v. Baker, *supra*. The latest rule adopted by our Supreme Court is found in Dayton v. Bauman, 66 Ohio St. 379 [64 N. E. Rep. 433], where it is held that, "The limitation of Sec. 19, Art. 1 of the constitution on Sec. 6, Art. 13 does not affect or prohibit the raising of money by assessment to pay for surface improvements of streets, sewers, etc., so long as the assessment does not exceed the special benefit conferred."

By statute the right clearly exists to include damages for change of grade in the assessment. Under the case of Cleveland v. Wick, 18 Ohio St. 303, the Supreme Court held that this could be done.

Damages for change of grade could be included in the assessments. We are not unmindful that McGlynn v. Toledo, 12 Circ. Dec. 15 (22 R. 34, affirmed by the Supreme Court, Toledo v. McGlynn, 67 Ohio St. 498), announces a different rule, but we respectfully submit that the new rule did not come into force and effect until after this assessment was levied.

The settled judicial construction of a statute, so far as contract rights were acquired thereunder, is as much a part of the statute as the text itself, and a change in decisions is the same in its effect on preexisting contracts as a repeal, or an amendment by legislative enactments. Douglass v. Pike Co. 101 U. S. 677.

Objection is made that the bonds bear four per cent. interest, but the annual installments, when the ten year plan is adopted, are charged six per cent. interest. The law fixes the interest which the unpaid portions of the assessments are to bear at six per cent. and this is decisive of the objections. It is no concern of the property owner that the city is able to borrow the money at a less rate. Suppose the city were compelled to pay a higher rate than six per cent. Would the property owner pay the loss, or the city? Stanley v. Cincinnati, 13 Dec. 368.

We are of the opinion that a fair construction of the contract would not require the contractor to do anything more in the way of repair on the street, or the keeping of it in repair, than to correct any defects of con-

struction or materials; that is to say, make good work that he may have done under his contract.    McGlynn v. Toledo, 12 Circ. Dec. 15 (22 R. 34).

The agreements of the plaintiff, the Asphalt Co., in regard to maintaining the street in repair for five years, free of cost to the city, apply only to 'pavements constructed these specifications.'  The stipulation as to such repairs, on account of the city, at prices to be paid in the future, do not appear to impose on the property owners any charge for such repairs as part of the primary cost of an asphalt street.  The guarantee of the pavement for five years, as laid by the plaintiff, involves no extra charge against the adjoining property further than would be justly payable for a lasting pavement.  The term keeping the agreed work in repair free of cost is no longer than the reasonable period such work should last if properly done at the outset.  Barber Asphalt Pav. Co. v. Ullman, 137 Mo. 543 [38 S. W. Rep. 458]; Latham v. Wilmette, 168 Ill. 153 [48 N. E. Rep. 311]; Osborne v. Lyons, 73 N. W. Rep. 650 [104 Ia. 160].

Squares formed by the intersection of other streets that are crossed and improved may, if the object of improving the squares is the improvement of such street, assess the whole expense upon the same property on which the other expenses of such improvement are assessed.  Creighton v. Scott, 14 Ohio St. 438.

In assessing the cost of a street improvement on abutting property by the front foot, regard must be had as to what is the real front of the property.  This is a question of fact, to be determined by the manner in which it was laid out.  Haviland v. Columbus, 50 Ohio St. 471 [34 N. E. Rep. 679].

## JELKE, J.

Mr. Brengleman's lot abuts 73.43 feet on Carthage avenue.  It has but one front, that of 68.44 feet on the Montgomery pike.

Under the Haviland case an assessment by the front foot must have regard to the real front of the property.  We see no reason why the principle or fiction of that case should not apply equally to the rear as to the side of a lot.  Sixty-eight and forty-four hundredths feet on Carthage avenue can be assessed.    Haviland v. Columbus, 50 Ohio St. 471 [34 N. E. Rep. 679].

The advertising in the Times-Star and Post in the matter of the improvement was approved by this court in the case of Davis v. Norwood, 39 Bull. 352, affirmed by the Supreme Court.  Davis v. Norwood (Vil.) 58 Ohio St. 714, 716 [35 N. E. Rep. 1052].

As to the defense that the Brengelman lot had not been benefited we find that it has.

Is the fifteen per cent. retained for five years for repairs and maintenance, or for guaranty on the part of the contractor as to the quality of his work?

We are thoroughly in accord with the principle of McGlynn v. Toledo, 12 Circ. Dec. 15 (22 R. 34, 48). If it is a guaranty it is properly a part of the original contract and is not deductible from the assessment; if it is for maintenance and repairs it should not be added into the assessment and cannot be assessed against the abutting property.

In the case at bar what is it in fact? The most perfectly constructed macadam surface will not wear five years; it will hardly wear one year without mending. The contractor can hardly be considered to have guaranteed the impossible.

Again, fifteen per cent. is an unusually large percentage to retain for guaranty merely. We have no doubt that both ideas were present in the minds of council and the contractor. We feel sure that some of the fifteen per cent. was for maintenance and the repair of the inevitable wear and tear which must begin on a macadam street as soon as open to travel. It goes without saying that the better the job the fewer the repairs.

On the evidence before us we cannot measure or divide the percentage retained between the two purposes. The presence, however, of the unlawful element in the fifteen per cent, so vitiates it that the burden is on the village, if expert witnesses can be had to enable the court to divide it with reasonable certainty, to furnish such evidence.

Damages paid to abutting property owners for the appropriation of property, property rights and change of grade and the cost of excavation occasioned by change of the grade, cannot be assessed back upon the abutting property. Dayton v. Bauman, 66 Ohio St. 379 [64 N. E. Rep. 433]; Cincinnati L. & N. Ry. Co. v. Cincinnati, 62 Ohio St. 465 [57 N. E. Rep. 229; 49 L. R. A. 566].

The law authorizes the corporation to borrow upon credit money sufficient to pay the estimated cost and expense of the improvement. The annual installments are figured so as to ultimately pay these bonds and the interest thereon. These installments differ in this respect from installments of sewer assessments on which the law fixes the rate of interest on the unpaid portions thereof. In these street assessments, if levied correctly according to principle and theory, the amount borrowed upon which interest is paid and which is ultimately repaid should be exactly recovered from the assessments, no more and no less.

Practically it is impossible to figure this exactly in advance. But under the limitation against selling below par, too little need never be

borrowed and probably never is.  There is always an excess or surplus or premium on account of the good credit of the municipality.  But it is not part of the municipal functions to da a banking business, to finance or underwrite improvements of this nature at a profit.  To even things up, whatever of a premium or surplus is yielded should be credited back on the assessments of those who have the principal and interest of the debt to pay.

Assessment by the front fot is but a rule-of-thumb resorted to for the measurement of special benefits upon which the whole right to assess must rest.  Where this rule has been in good faith adopted the courts have stuck to the literalism of the term even to the extent of resorting to a legal fiction to preserve it, as in Haviland v. Columbus, *supra.*  This being so, we see no reason why the front feet of a lot, the sides of which are not at right angles to the road, should be measured by the distance between the sides, or in any other manner than by actual abutting front feet.

The above principles are applicable to the Brengelman, Fridman, Cadwallader, Chappel and Potter cases [unreported].

Subsequently the village offered certain evidence, and there was a partial rehearing, after which the court said:

Upon further consideration we continue satisfied with our opinion.

We have since heard evidence offered by the village of Norwood in an effort to apportion $10,000 held by it between the two purposes of guaranty on the one hand and maintenance and repairs on the other.

The evidence is meager and not very satisfactory.  However, in our endeavor to find what is equitable and fair between the village and the property owners, and remembering that we are to be guided by what commends itself to the chancellor's conscience rather than by a strict measure of legal proof, we have concluded to make the division on the following principle:

We find that in the large majority of contracts of this kind a guaranty fund of ten per cent. for two years is provided, and that these contracts have been sustained on the ground that such fund was an indemnity provided against structural defects and bad material and workmanship.

Adopting this as a reasonable reserve for guaranty, and scaling down the $10,000 to such reserve, we find $2,666.66 is the proper amount to be set aside for guaranty, and the balance must have been for repairs and maintenance, and is, therefore, invalid.

This issue, as between an abutting property owner subject to an assessment and the village of Norwood, was not submitted in the case of Davis v. Norwood, 39 Bull. 352, which was a suit by a taxpayer, conducted

for the benefit of the contractor, and it is not adjudicated here.   Neither, do we want anything here said to be construed as passing upon any of the issues pending elsewhere between the village and the contractor.

On the question as to street intersections we are, of course, controlled by the holding of the Supreme Court in Creighton v. Scott, 14 Ohio St. 438, and understand that counsel for plaintiffs only hope to prevail on this point by persuading the Supreme Court to change this, its former holding.

Decrees accordingly.